Connolly v. Smith.

CONNOLLY and others *vs.* SMITH.

An *alien widow* is not entitled to dower, although at the time of her marriage her husband was *also an alien* and held land under the *act of* 1825 enabling aliens to purchase and hold real estate. Her husband had the capacity to purchase and hold real estate ; but she not having such capacity, cannot claim dower in the lands of her husband.

ERROR from the New York common pleas. This was an action of ejectment brought by Catharine Smith, to recover the *dower* assigned to her in the estate of her husband,

Patrick Smith, deceased. Patrick Smith being an *alien,* came to reside in this state in 1822. On the 1st August, 1823, he took the incipient steps to become naturalized, by duly declaring his intention to become a citizen. On 28th January, 1828, he filed in the office of the secretary of state a deposition and certificate, as required by the act of the legislature of this state passed in 1825, relative to the purchase and holding of real estate by *aliens ;* and on the 1st February, 1828, *the premises in which dower was claimed were* conveyed to him. On the 10th April, 1828, he *married* the plaintiff, who at the time of the marriage was an *alien,* and had not then and has not at any time since taken any measures under any of the enabling statutes to enable her to purchase or hold real estate. She came to reside in this state in 1822. On the 10th March, 1829, Patrick Smith completed his naturalization, and in 1834 he died. The evidence being closed, the counsel for the defendants insisted that the plaintiff ought not to recover, because she was not entitled to be endowed by reason of her *alienage.* The presiding judge, however, decided that she was entitled to her dower under the act of 21st April, 1825, notwithstanding her alienage. The plaintiff had a verdict, on which judgment being entered, the defendants sued out a writ of error.

*C. W. Sandford,* for the plaintiffs in error.

*J. L. Wendell,* for the defendant.

*By the Court,* COWEN J. The ground taken in favor of a reversal is, that the *alien widow of a citizen,* (she not being a resident till 1822,) is not entitled to dower. And this I understand to have been distinctly held in *Mick v. Mick,* 10 Wendell, 379. The widow, in that case, having been married and emigrating after 1808, the late chief justice, who delivered the opinion of the court, said she had no capacity to take *either way*—that is, as *dowager* or as *devisee ;* and she therefore lost the whole land. He said that the legislature, in all their liberality to resident aliens have

never made any provision for the *alien widow of a natural born citizen ;* and it is not now denied that the alien widow of a *naturalized citizen* must stand on the same footing. ᵗ ⁱ

The acts within which the widow took in *Sutliff* v. *Forgey*, 1 Cowen, 89, 5 id. 715, S. C. on error, were expressly confined to such aliens only as came here to reside previous to the close of the legislative session of 1808. 3 R. S. 226, 228, 2d ed. They might *purchase* lands not exceeding in quantity 1000 acres. This was the only restriction; and the recital indicating a strong disposition in the legislature to give them general countenance, and especially by means of a power to make purchases, this court, and afterwards the court of errors, in *Sutliff* v. *Forgey*, extended the acts to the alien widow, who became a settler and married a man capable of holding. They held that she took as *purchaser*, not within the *words* but the *equity* of those acts. In short, they placed this acquisition by marriage on the same footing as if the contingent interest of the wife had been *conveyed to her by deed*, instead of taking effect by operation of law. The view is confirmed by *Mick* v. *Mick*, and the later case of *Priest* v. *Cummings*, 16 Wendell, 615. Had the plaintiff below, therefore, emigrated before 1808, and been married before 1825, she would have been entitled as a *purchaser*. But we are without further legislation on the subject till the act of April 21, 1825, p. 427, which provides expressly that *no alien shall be capable of taking or holding lands or real estate*, unless he shall have made and filed with the secretary of state a deposition, showing that he has taken the incipient steps to be naturalized, pursuant to the laws of the United States, &c. In this he must, among other things, depose that it his intention to continue his residence and become a naturalized citizen. Pending this act, the provisions of which were substantially re-enacted in 1830, 1 R. S. 715, 716, 2d ed. the plaintiff below intermarried with Patrick Smith, who had filed the proper deposition ; and it is not denied that he was capable of taking. In 1829 he was naturalized, and died after the passage of the revised statutes, the plaintiff below still being an alien, and not having taken any steps for procuring her own nat-

uralization. Section 17 of the revised statutes, 1 R. S. 716 2d ed., provides that any "alien shall not be capable of taking or holding any lands or real estate which may have descended or been devised or conveyed to him previously to his having become such resident and made such deposition," &c. And the only direct provision giving dower to an alien widow is contained in id. 733, § 2, which is merely that "the widow of any *alien* who, at the time of his death, shall be entitled by law to hold any real estate, if she be an inhabitant of this state at the time of such death, shall be entitled to dower of such estate, in the same manner as if such alien had been a native citizen." Now the plaintiff below was not entitled under this act, because she was not the widow of an *alien*, but of a *naturalized citizen*. By the act of 1825, during the existence of which she intermarried, she was expressly cut off from taking or holding. By the revised statutes, § 17, she was also cut off. She must take as *purchaser* or not at all, and that she cannot do for want of the deposition. Thus both points made in her behalf fail. She never acquired any contingent right as the alien widow of an alien purchaser, for under the act of 1825 she had no capacity to take or hold any right. I agree with her counsel, that had she come here before 1808, and intermarried while the acts of 1802 and 1808 were in force, there would be great difficulty in saying that the act of the husband in afterwards becoming naturalized, even under a statute like that of 1825, it being passed subsequent to the marriage, should *divest* her right. But this point assumes what never existed, in two particulars: 1. she was not here previous to 1808, and 2. if she had been, the acts under which she could once have taken and holden real estate, were previous to her intermarriage, repealed by the act of 1825, or rather it demanded a farther condition, never complied with by her, in order to confer a capacity. The course of legislation has been such, that while it has conferred a right of dower on the resident *alien widow* of an *alien* purchaser, it has denied the same right to the *alien* widow of either a *natural born* or *naturalized citizen*, unless she file the proper deposition.

We do not deny her right because her husband was incapable of taking ; but the wife must acquire a capacity of her own. It never has been supposed since *Sutliff* v. *Forgey*, that her capacity followed that of her husband. Such a consequence was expressly denied in that case by all the judges. We adopt the remark of Savage, C. J., in *Mick* v. *Mick*, " No deposition having been filed, she had no capacity to take in either way ; i. e. as *dowager*, or as *devisee*.

The result is that the judgment of the court below must be reversed, and a venire *de novo* must issue ; the costs to abide the event.*

* See *Priest* v. *Cummings*, 20 Wendell, 338, in the court for the correction of errors, where the rights of *alien widows* under the enabling statutes in respect to aliens purchasing and holding real estate are fully considered.