# SUPREME COURT.

Mary Ann Greer agt. Margaret S. Sankston and others.

An *alien widow* cannot be endowed of lands of her husband, who was a naturalized citizen of the United States at the time of his death, where the marriage took place prior to the act of the legislature of this state passed April 30, 1845, when both husband and wife were *aliens*, and the widow never having been a resident of this country.

*New York General Term, May,* 1858.
*Before* DAVIES, P. J., INGRAHAM *and* SUTHERLAND, *Justices.*
APPEAL from a judgment at special term.

E. F. BROWN, *for plaintiff.*
B. F. DUNNING, *for defendant Sankston.*
. SCHELL, SLOSSON and HUTCHINS, *for North River Insurance Company.*

By the court, INGRAHAM, J. The title to the premises sold under the judgment in this action is objected to on the ground that the widow of Henry Sankston, the father of the plaintiff, is entitled to dower therein, and therefore the title to the premises is defective.

Sankston was married in 1829 to Ann McConnell in Ireland, where they both resided, and were citizens of that country. The husband came to this country in 1831, and has resided since that time until his death here. He was naturalized in 1836, and he purchased the property in question in 1843. His widow has continued to reside in Ireland until this time. Sankston died in 1854.

There can be no doubt that prior to the act of 1845 an alien widow could not be endowed of land of her husband, whether a citizen or not. (*Connolly* agt. *Smith,* 21 *Wend.* 59.)

Unless that act has changed the law on this subject, she still remains incapable of being endowed.

By the second section of that act provision is made for the wife of an alien resident of the state, who had died before the passage of the act, and the wife of any alien so resident, who should thereafter purchase any lands, giving to her dower therein.

The third section allows any woman being an alien, who had, before the passage of the act, or who should after that time marry a citizen of the United States, to have dower in his lands.

The second section clearly does not apply to this case.

The third section describes two cases, one of a woman, who shall thereafter marry a citizen, and the other of a woman who had before the act married a citizen of the United States.

The first case in this section is also inapplicable, and the only question remaining is whether Mrs. Sankston married a citizen of the United States before 1845.

I can see no ground upon which she could be brought within the provisions of that section. At the time of the marriage they were both aliens, residing in Ireland, and never having been in this country. He was not then a citizen, and she could not be said to have married a citizen prior to 1845.

It is evident from the whole of the section, that the intent of the legislature in passing this section was to provide for the cases of citizens who had married alien wives, either before or after the passage of the act, in the same manner as they had in the second section provided for the widows and wives of resident aliens who could hold real estate.

The cases of widows of aliens naturalized after their marriage, and the wives of non-resident aliens, are not provided for under the statute.

There seems to be no good reason for the distinction, and the same rights in regard to dower might as well have been given to the latter as to the former. But it is not for the courts to legislate, and we can only consider this a " casus omissus," which can only be supplied by subsequent legislation.

We are of opinion, that the widow of Sankston has no right to dower in the lands of her husband, and that the order appealed from should be affirmed.